696 P.2d 1002

**MOUNTAIN STATES TELEPHONE
AND TELEGRAPH COMPANY,**
Applicant-Appellant,

v.

**NEW MEXICO STATE CORPORATION
COMMISSION, Respondent-Appellee.**

No. 15117.

Supreme Court of New Mexico.

March 11, 1985.

T.M. Ledingham, Albuquerque, Sutin, Thayer & Browne, Mary McDonald, Richard L.C. Virtue, Santa Fe, for Mountain States.

Maureen A. Sanders, Gen. Counsel, Santa Fe, for Corp. Com'n Staff.

Richard H. Levin, Sp. Asst. Atty. Gen., Albuquerque, Paul Bardacke, Atty. Gen., Michael Barlow, Asst. Atty. Gen., Santa Fe, for Corp. Com'n.

Dennis K. Muncy, Champaign, Ill., James E. Snead, Albuquerque, Margot Steadman, Santa Fe, John Myers, Ray E. Riordan, Las Cruces, J. Michele Guttmann, Albuquerque, for intervenors American Dist. Tel. Co., and N.M. Telecommunications Users Group.

Charles D. Olmsted, Santa Fe, for intervenor Continental Telephone Co. of the West.

Dellon E. Coker, Falls Church, Va., for intervenor U.S. Dept. of Defense.

Mark J. Moll, Albuquerque, for intervenor EDS Federal Corp.

Chris Coppin, Albuquerque, for intervenors Lorenzo Sanchez, Sarah L. Bryant and Tomasita Mares.

Harry L. Patton, Clovis, for intervenor City of Clovis.

Ward W. Wueste, Jr., San Angelo, Tex., for intervenor General Telephone Co. of the Southwest.

Reese Fullerton, Santa Fe, for intervenor N.M. Ass'n of Counties.

Casey Shpall, Denver, Colo., for intervenor Mountain States Legal Foundation.

Paul R. Caldwell, Santa Fe, Sigrid E. Olson, Albuquerque, for intervenor AAA Alarm Co., Inc.

Patrick Ortiz, Santa Fe, amicus curiae, for Public Service Com'n.

**OPINION**

PER CURIAM.

This is a removal proceeding under N.M. Const. art. XI, Section 7 (Cum.Supp.1983), from the New Mexico State Corporation Commission's (Commission) Order Number 3741(h) denying a motion for interim rate relief filed by Mountain States Telephone and Telegraph Company (Mountain States). We affirm.

The issue we address is whether the Commission erred in denying interim rate relief to Mountain States.

On June 17, 1983, Mountain States applied to the Commission for a permanent rate increase. Included in its application was the motion for interim rate relief and supporting written testimony. The motion requested that an interim rate schedule, which would provide approximately 31.9 million dollars of additional annual revenues, be placed into effect under bond and subject to refund until the Commission

made its final decision on Mountain States' permanent rate increase application, or until the end of the six month suspension period under N.M. Const. art. XI, Section 8, whichever occurred first.

On August 22, 1983, the Commission held a hearing on the motion. At the conclusion of the hearing, the Commission announced its decision denying the motion and thereafter entered the order denying interim rate relief. Mountain States filed an application for order of removal which the Commission granted.

On appeal, Mountain States claims that *Bluefield Water Works & Improvement Co. v. Public Service Commission*, 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923), *In re Rates & Charges of Mountain States Telephone & Telegraph Co.*, 99 N.M. 1, 653 P.2d 501 (1982) (*Mountain States 1982*), and *Mountain States Telephone & Telegraph Co. v. New Mexico State Corporation Commission*, 90 N.M. 325, 563 P.2d 588 (1977) (*Mountain States 1977*), require the Commission to award interim rate relief when a public utility shows confiscation as defined by *Bluefield*. Mountain States further claims that it has shown through uncontroverted testimony that confiscation of its property was occurring at the time it sought interim rate relief. Mountain States therefore argues that the Commission erred in denying interim rate relief.

In *Bluefield*, the United States Supreme Court determined that confiscation of a public utility company's property occurs if rates "are not sufficient to yield a reasonable return on the value of the property used at the time it is being used to render the service." 262 U.S. at 690, 43 S.Ct. at 678. The Supreme Court also determined that a public utility is entitled to rates that provide a rate of return equal to that being made on similar investments at the same time and in the same part of the country. *Id.* at 692, 43 S.Ct. at 678. The Supreme Court further determined that the return should be reasonably sufficient to assure confidence in the public utility company's "financial soundness," adequate to support

and maintain its credit, and enable it to raise the funds necessary to discharge its public duties. *Id.* at 693, 43 S.Ct. at 679.

*Bluefield* involved a state public service commission's order setting *permanent* water rates. The case did *not* involve the setting of *interim* rates. Thus, in *Mountain States 1982*, this Court agreed with *Bluefield's* definition of confiscation but declined to hold that confiscatory rates *require* the Commission to grant *interim* rate relief. 99 N.M. at 10, 653 P.2d at 510. However, we determined that "interim relief is *permissible* if present rates are confiscatory." *Id.* (emphasis added).

One set of circumstances under which this Court held that the Commission should have set interim rates was presented in *Mountain States 1977*. In that case, the Commission established permanent rates through a two-phase process: the first phase determined the adequacy of Mountain States' rate of return; the second phase determined the schedule of rates. In the first phase, the Commission concluded that Mountain States was entitled to an increased rate of return. After more than six months, however, the Commission had not agreed to Mountain States' proposed schedule of rates nor had it fixed a rate schedule of its own. On removal, this Court determined that once the Commission found that Mountain States was entitled to an increase on its rate of return, and when it became obvious that permanent rates would not be set for a "considerable length of time," (*i.e.*, beyond the six-month limitation promulgated in N.M. Const. art. XI, Section 8) the Commission had a constitutional duty to set interim rates. 90 N.M. at 336, 563 P.2d at 599. In the present case, the "two-phase" process was not followed by the Commission. Thus, the Commission had not determined that Mountain States was entitled to an increased rate of return nor was there any indication that the Commission's decision on a permanent rate schedule would exceed the six-month constitutional limitation.[1] Furthermore,

---

1. On December 16, 1983, the Commission entered its final order, concluding that Mountain

Mountain States had the constitutional safeguard of having its proposed rates placed in effect, under bond, if the Commission failed to act within the six-month period. N.M. Const. art. XI, § 8; *Mountain States 1982*, 99 N.M. at 7, 653 P.2d at 507; *Mountain States 1977*, 90 N.M. at 333–34, 563 P.2d at 596–97. Therefore, *Mountain States 1977* cannot be relied on to hold that the Commission should have granted interim rate relief in the present case.

In addition, Mountain States did not prove that, under *Bluefield*, interim rates are necessary because it has not shown that its "financial soundness" has been impaired. 262 U.S. at 693, 43 S.Ct. at 679. That is, Mountain States has failed to prove that its present rates do not permit it to earn a return "equal to that generally being made at the same time and in the same general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties," *id.* at 692, 43 S.Ct. at 678; nor has it proven that its rate of return is inadequate "to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties." *Id.* at 693, 43 S.Ct. at 679. To the contrary, the record shows that the projected rate of return on Mountain

States required additional revenues of $33,693,289 and summarizing the spread of rates for

States' common equity for the final four months of 1983, the period for which interim rate relief was sought, was 10.94%, which compares favorably with Mountain States' 1982 overall average rate of return of 10.5% in all states. The record further shows that earnings at lower than projected levels have permitted Mountain States to make dividend payments of more than 85 million dollars to AT & T (Mountain States' sole shareholder) and AT & T shareholders. Moreover, the record does not show that denial of interim rate relief would cause curtailment of planned construction and facilities acquisition during the interim period, or that there would be any adverse impact on maintenance of company equipment and on customer service.

We conclude that Mountain States did not prove confiscation warranting interim rate relief. We therefore determine that the Commission did not err in its decision.

IT IS SO ORDERED.

generating those additional revenues.